387 So.2d 611 (1980)
Rev. Albert BOURGEOIS, Victoria Taylor, Cora Marzette and Clarence Walker
v.
Rev. Lawrence LANDRUM and Ebenezer Baptist Church of New Orleans.
No. 11057.
Court of Appeal of Louisiana, Fourth Circuit.
May 13, 1980.
Rehearing Denied September 15, 1980.
Carolyn N. Hazard, and Michael B. McColloster, New Orleans, for plaintiffs-appellants.
Harris, Stampley, McKee, Lombard & Cates, Sidney H. Cates, IV, New Orleans, for defendants-appellees.
Before BOUTALL, GARRISON and BARRY, JJ.
BARRY, Judge.
This dispute arose out of a demand by plaintiffs to examine the books and records of the defendant church which is a non-profit corporation. Plaintiffs claim to be members of the church, which is not denied, and their demand to examine the books and records falls under LSA-R.S. 12:223(A) and *612 (C) of the Louisiana Nonprofit Corporation Law.[1]
Plaintiffs secured a court order to examine the church records, did so and were unsatisfied that all records had been produced. Subsequently, defendants filed an exception of no right of action[2] and lack of jurisdiction over the subject matter.[3] The trial court overruled the exception of no right of action, but maintained the exception of lack of subject matter jurisdiction and accordingly dismissed plaintiffs' lawsuit.
Defendants-appellees do not contest appellants' position as church members. Plaintiffs assert their right to examine the records ". . . in order to see for themselves how much money the church takes in and how the money is spent." There is no allegation of misappropriation or mismanagement, only the desire to inspect the church records.
The trial judge relied on Henry v. Newman, 351 So.2d 1277 (La.App. 1st Cir., 1977) in sustaining the exception of lack of subject matter jurisdiction.
In Henry, supra, the dispute involved changing locations of the church building. The First Circuit defined the limited role which secular courts should assume in religious disputes in order not to interfere with constitutional guarantees of religious freedom. It determined that location of the church building was a purely ecclesiastical matter within the protection of the First and Fourteenth Amendments to the Constitution. The court, in dicta, agreed with plaintiffs that "it is `well settled that courts will not deal with spiritual or ecclesiastical matters pertaining to incorporated religious societies . . . but . . . that `. . . it is equally well recognized that courts may and should deal with property rights involving such societies.'" 351 So.2d at 1279.
Where property disputes arise civil courts are not precluded from settling the issue. Presbyterian Ch. v. Mary E. B. Hull Mem. Pres. Ch., 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969); R. W. Jones, Sr., et al. v. Charles T. Wolf, et al., 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979).
When the matter at issue is not a dispute over property rights but possible dissension regarding church management in a religious society, then courts are not to interfere. The Supreme Court clearly stated their objective in Jones, supra, "to free civil courts completely from entanglement in questions of religious doctrine, polity and practice." 99 S.Ct. at 3025.
A church organized under the provisions of our corporation statutes does not automatically subject itself to civil review in matters which are ecclesiastical in nature or absent a property dispute. Appellants provide no specifications to conclude that a property dispute exists. Accordingly, we agree with the trial judge in declining jurisdiction over the subject matter of this lawsuit.
The District Court judgment is affirmed with plaintiffs-appellants to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] A. Every corporation shall keep at its registered office (1) records of the meetings of its members and directors, and of committees of the board, share and membership records giving the names and addresses of the members in alphabetical order by classes and series and the number of shares held by each, and records of its assets, liabilities, receipts, disbursements, gains, losses, capital and surplus; and (2) separate records of all trust funds held by it. Whenever membership is terminated, this fact shall be recorded in the share or membership record together with the date on which the membership ceased, and transfers of shares shall similarly be recorded.

. . . . .
C. Every shareholder and voting member may examine in person, or by agent or attorney, at any reasonable time, the records of the corporation listed in subsection A of this section.
[2] LSA-C.C.P. art. 927
[3] LSA-C.C.P. art. 925